UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Richard Rael, | Case No. 23-CV-03720 (JMB/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| Q3 Contracting, Inc., | |
| Defendant. | |

---

Michele R. Fisher, Nichols Kaster PLLP, Minneapolis, MN; Richard Burch, *pro hac vice*, Bruckner Burch PLLC, Houston, TX; Michael Josephson, *pro hac vice* and Richard M. Schreiber, *pro hac vice*, Josephson Dunlap LLP, Houston, TX; for Plaintiff Richard Rael.

Gina K. Janeiro and Jennell K. Shannon, Jackson Lewis P.C., Minneapolis, MN; Melisa H. Panagakos, *pro hac vice*, Jackson Lewis, P.C. Denver, CO; Allan S. Rubin, Jackson Lewis, P.C., Southfield, MI; for Defendant Q3 Contracting, Inc.

---

This matter is before the Court on Defendant Q3 Contracting, Inc.'s (Q3C) motion to dismiss Plaintiff Richard Rael's Complaint. In the Complaint, Rael alleges that Q3C, his former employer, violated the Fair Labor Standards Act (FLSA) and Colorado Wage Collection Act (CWCA) by failing to pay certain overtime and regular wages for time spent conducting required safety inspections on a company vehicle and commuting to job sites, among other things. For the reasons discussed below, the Court grants Q3C's motion in part, and denies it in part.

## BACKGROUND

Q3C is a "full-service construction provider" in energy, traffic, and other specialty industries. (Doc. No. 1 [hereinafter "Compl."] ¶ 55.) Q3C operates throughout the country

1

with a "highly mobile workforce" of more than 1,500 employees, and has "[m]ajor operations centers in St. Paul, Minnesota, and Denver, Colorado." (*Id.* ¶ 55 & n.1.)

From March 2023 through July 2023, Q3C employed Rael as a utility locator "in and around Denver, Colorado." (*Id.* ¶¶ 22, 62.) Utility locators provide underground utility-locating services to Q3C's clients, which services include identifying whether a utility location conflicts with proposed excavation locations. (*Id.* ¶¶ 56, 64.) Utility locators use company vehicles to travel to and from their "tickets," or various inspection locations, throughout their workdays. (*See, e.g.*, *id.* ¶ 71.) Q3C monitors its utility locators' workflow throughout the day via its company-wide ticketing system. (*Id.* ¶ 106.) Q3C maintains GPS tracking devices on its company vehicles to monitor its employees' movement and locations. (*Id.* ¶ 107.) Q3C classifies Rael and its other utility locators as "non-exempt" under both the FLSA and CWCA (i.e., not-exempt from the requirement to pay overtime for hours worked) and paid him on an hourly basis. (*Id.* ¶¶ 23, 57.)

In connection with his use of his company vehicle, Rael was required by Q3C and the U.S. Department of Transportation to perform two fifteen-minute vehicle inspections per day; once before commuting to his first ticket of the day, and once after commuting home after his last ticket of the day. (*Id.* ¶ 71; *see also id.* ¶¶ 90, 91, 104.) The Complaint alleges that these vehicle inspections include the following tasks: "walking around the vehicle and conducting a visual inspection, checking the undercarriage, checking the brakes, checking the oil, checking the tires, checking all mirrors, and ensuring the lights and horn function properly." (*Id.* ¶ 91.) According to company policy, Rael and other utility locators must provide "weekly reports to Q3C confirming they completed their

2

mandatory pre- and post-shift vehicle inspections every shift they worked." (*Id.* ¶ 105.) Rael also alleges that utility locators signed "Vehicle Agreements" related to their use and maintenance of Q3C's vehicles. (*Id.* ¶ 104.)

Q3C applies a uniform "ticket to ticket" timekeeping policy to all utility locators. (*Id.* ¶¶ 60, 61, 68, 82.) Under this policy, utility locators may not clock in until they arrive at their first ticket location, and they must clock out before their commute home from their final ticket location of the day. (*Id.* ¶¶ 71–73, 88.) In other words, utility locators cannot be clocked in during the required vehicle inspections or during their commutes to and from home at the start and end of each workday. (*See id.*) The Complaint alleges that Rael's commutes to his first-assigned and last-assigned tickets of the day, together, averaged approximately one to two hours per day, or four to ten hours per week. (*Id.* ¶ 73.) Completion of the twice daily vehicle inspections added an additional thirty minutes to the workday, amounting to between two-and-a-half and three hours per week. (*Id.* ¶ 72.) The Complaint also alleges that the time Rael spent commuting and conducting pre- and post-commute vehicle inspections were "primarily for the benefit of Q3C's business." (*See id.* ¶¶ 94, 95, 102, 181, 186, 231.)

Q3C's timekeeping policy also requires utility locators to clock out for thirty minutes each day for a meal break. (*Id.* ¶¶ 76, 114.) In fact, utility locators' timesheets will not be approved unless they reflect these meal-time clock-outs. (*Id.* ¶ 116.) Because of Q3C's strict productivity requirements, Rael and other utility locators routinely perform utility-location work during these meal breaks, including "completing tickets, driving from one ticket to another, taking/making calls to Q3C's clients, and/or route planning." (*Id.*

3

¶¶ 78, 120, 123.) These unpaid meal breaks amount to up to two-and-a-half hours per week. (*See id.* ¶¶ 76, 105.) Altogether, the Complaint alleges that, while employed at Q3C, Rael typically worked about sixty hours per week—around fifty "on the clock," and another ten hours, comprising overtime, unpaid and "off the clock." (*Id.* ¶¶ 67, 80.)

On December 4, 2023, Rael filed his three-count Complaint against Q3C, in which he claims that Q3C violated the FLSA by failing to pay required overtime wages for time spent conducting vehicle inspections, commuting to and from the first and last tickets of the day, and for performing work during unpaid meal breaks (Count I). Rael also claims that Q3C violated the CWCA by failing to pay required overtime wages (Count II) and regular wages (Count III) for time spent conducting vehicle inspections, commuting to and from the first and last tickets of the day, and for performing work during unpaid meal breaks. Rael purports to bring these claims on behalf of himself, an FLSA collective class, and an FLSA Colorado class. (*Id.* ¶¶ 35–38, 132–63.)

## DISCUSSION

Q3C now moves for partial dismissal of Rael's claims, arguing that, to the extent Rael alleges that time spent on vehicle inspections and home-and-back commutes are compensable under the FLSA and CWCA, they fail as a matter of law because the tasks Rael alleges that he performed are not compensable under either statutory scheme.[1]

---

[1] Q3C does not move to dismiss any portion of Rael's claims related to any unpaid overtime or regular wages related to work allegedly performed during unpaid meal breaks.

4

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint to be true and then determines whether they state a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading has facial plausibility when its factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In this analysis, the Court construes the allegations and draws inferences from them in the light most favorable to the plaintiff. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018). However, the Court will not give the plaintiff the benefit of unreasonable inferences, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010), and is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**I.   CLAIMS UNDER FEDERAL LAW**

Q3C argues that Rael's FLSA claim is barred to the extent he seeks overtime compensation for the time spent completing required vehicle inspections and commuting to and from his first and last tickets each day. (Doc. No. 17 at 6–13.) Because the Complaint fails to allege sufficient facts to establish that Rael's principal employment activities include driving vehicles, the Complaint does not state a viable claim under the FLSA related to the vehicle inspections and the commutes to and from the first and last tickets of the day.

5

The FLSA's overtime provision requires that employers pay hourly, non-exempt employees like Rael for all compensable time worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1); *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (observing that, to prevail on an FLSA overtime claim, an aggrieved employee must simply show that the employee "performed work for which he was not properly compensated") (quotation omitted). The Portal-to-Portal Act, 29 U.S.C. § 254, which amended the FLSA, provides generally that employees' regular commutes to and from home[2] are not compensable. 29 U.S.C. § 254(a)(1); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2018 WL 2348797, at *4 (Apr. 12, 2018) [hereinafter "2018 Opinion Letter"] ("[C]ompensable worktime generally does not include time spent commuting between home and work, even when the employee works at different job sites.").[3] It also clarifies that, generally, though employees' principal activities are compensable, activities performed by an employee that are "preliminary to or postliminary to" an employee's "principal activity or activities" are not compensable. 29 U.S.C. § 254(a)(2). Indeed,

---

[2] Though Rael alleges in the Complaint that some utility locators may drive to and from their first and last tickets of the day from an assigned Q3C facility and not from their homes (Compl. ¶¶ 7, 9, 90, 158(d), 185), he alleges that he commuted to and from his first and last tickets of the day from his home. (*Id.* ¶ 71.)

[3] The Eighth Circuit has acknowledged the non-binding but persuasive value of the U.S. Department of Labor's Wage and Hour Division's opinion letters. *Perez v. Contingent Care, LLC*, 820 F.3d 288, 293 n.4 (8th Cir. 2016) (relying on opinion letter to resolve an FLSA legal issue on appeal from district court's post-trial order).

6

preliminary and postliminary activities that are purely incidental to the use of an employer-provided vehicle are not compensable work activities:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

*Id.* Thus, to raise a claim under the FLSA for Q3C's alleged failure to compensate Rael for the time spent conducting required pre- and post-commute vehicle inspections, Rael must at least plausibly allege that the vehicle inspections were part of his principal activities.

However, the Portal-to-Portal Act did not affect the "continuous workday rule," which guarantees employees compensation from and including performance of their first principal activity of the workday until and including their last principal activity of the workday. *See* 29 C.F.R. § 790.6(b). Therefore, when the "continuous workday rule" is triggered by the performance of a principal activity, then the Portal-to-Portal Act's general exclusion of commute time from compensable work activities does not apply. *Guyton v. Tyson Foods, Inc.*, 767 F.3d 754, 758–59 (8th Cir. 2014). Because the Portal-to-Portal Act left the continuous workday rule intact, the Complaint could state viable claims under the FLSA for uncompensated time spent commuting to the first and from the last tickets of the day if the Complaint plausibly alleges that the pre- and post-commute vehicle inspections were part of Rael's principal activities.

Neither the Portal-to-Portal Act nor the Department of Labor's regulations define what constitutes a "principal activity." *See Steiner v. Mitchell*, 350 U.S. 247, 252–53 (1956). Courts, however, have concluded that the determination of whether an activity falls within an employee's principal activities is "not governed by whether the employer requires the activity or whether the activity benefits the employer." *Deutsch v. My Pillow, Inc.*, No. 20-CV-00318 (SRN/ECW), 2023 WL 3125549, at *10 (D. Minn. Apr. 27, 2023). Instead, it is "tied to the productive work that the employee is *employed to perform*."[4] *Id.* (quoting *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014)) (emphasis in original). Stated another way, "principal activities" are "all activities which are an integral *and* indispensable part of the principal activities." *Integrity Staffing*, 574 U.S. at 33 (quoting *Steiner*, 350 U.S. at 252–53) (emphasis added). An activity is both an integral and indispensable part of an employee's principal activities "if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.*

For example, in *Ahle v. Veracity Research. Co.*, 738 F. Supp. 2d 896 (D. Minn. 2010), this Court considered whether an employer violated the FLSA for not compensating

---

[4] The Complaint alleges that the time Rael spent commuting and conducting pre- and post-commute vehicle inspections were "primarily for the benefit of Q3C's business." (*See* Compl. ¶¶ 94, 95, 102, 181, 186, 231.) This historically was the test under federal law to determine whether preliminary and postliminary commute activities were a principal activity and, thus, compensable. However, in *Integrity Staffing*, the U.S. Supreme Court rejected that test as "overbroad." 574 U.S. at 36. As discussed below in Part II, this change did not affect Colorado law, which continues to tie compensable activities to the question of whether those activities benefit the employer.

8

private-investigator employees for time spent on several mandatory activities before commuting to their first surveillance site of the day, including "preparing their vehicles for surveillance by cleaning the interior, filling the gas tank, and cleaning the windows." *Id.* at 915 (quotation omitted). At summary judgment, the Court dismissed the investigators' claims to the extent they argued that the time spent cleaning, maintaining, and fueling their vehicles was compensable. *Id.* at 916. The Court observed that "such activities were 'merely incidental to the plaintiffs' travel to and from the job sites, and therefore fall within the [Portal-to-Portal Act] exclusion.'" *Id.* (quoting *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1291 (10th Cir. 2006)).

The Court's conclusion in *Ahle* was not novel or controversial. *See Integrity Staffing*, 574 U.S. at 35–36 (holding that employees were hired to retrieve products from warehouse shelves and package products for shipping, therefore time spent in mandatory facility security screenings were not integral and indispensable to perform their jobs and thus not compensable under the FLSA); *Chambers v. Sears Roebuck & Co.*, 428 Fed. App'x 400, 420 n.55 (5th Cir. 2011) (holding that performance of pre- and post-work vehicle safety inspection was "clearly incidental to the commute" and "thus non-compensable" (citing H.R. Rep. No. 104-585 at 5)); *Colella v. City of N.Y.*, 986 F. Supp. 2d 320, 342–44 (S.D.N.Y. 2013) (holding that building and maintenance employees' time spent conducting daily four- to thirty-minute vehicle inspections were incidental to their commutes and thus not compensable under the FLSA); *Donatti v. Charter Commc'ns, L.L.C.*, 950 F. Supp. 2d 1038, 1053 (W.D. Mo. 2013) (concluding utility technicians' time spent performing routine company-vehicle inspections were preliminary activities

9

incidental to commute and therefore not compensable); *Espinoza v. Cnty. of Fresno*, No. 1:07-CV-01145 (OWW/SMS), 2011 WL 3359632, at *7–8 (E.D. Cal. Aug. 3, 2011) (concluding that police officers' time spent washing and conducting routine safety inspections on patrol cars is not compensable time under the FLSA); *Espenscheid v. DirectSat USA, LLC*, No. 09-CV-00625, 2011 WL 10069108, at *22 (W.D. Wis. Apr. 11, 2011) (concluding on summary judgment that postliminary activities such as conducting vehicle maintenance were related to the commute, not the principal activity of servicing customers); *Whalen v. U.S.*, 93 Fed. Cl. 579, 600 (Fed. Cl. 2010) (holding that air traffic control specialists' time spent on vehicle inspections were not compensable under the FLSA because they were "an extension of plaintiffs' commute" and unrelated to their principal activities because all persons who visit air base were required to spend time doing such inspections).

Here, Rael's principal activity as a utility locator was to conduct underground utility-locating services for Q3C's clients. (Compl. ¶ 56.) In the language of the Complaint, which the Court accepts as true, Rael's "primary responsibilities included locating network lines for gas, electrical, cable, and communications companies . . . and identifying whether the utility owner's underground utilities conflict with proposed excavation locations." (*Id.* ¶ 64.) The Complaint does not allege that Rael was principally hired to drive his company vehicle, or that driving was both an integral *and* indispensable part of his utility-locating activities. As a result, his time spent conducting vehicle inspections before and after his first and last commutes of the day are distinct from his principal activity of conducting utility-locating services and, thus, not compensable under

the FLSA.[5]  *Cf. Barrentine v. Ark.-Best Freight Sys., Inc.*, 750 F.2d 47, 49 (8th Cir. 1984) (holding that over-the-road truckers' time spent conducting vehicle inspections was compensable time because the inspections were indispensable to the principal activity of driving vehicles); *see also Hensley v. MacMillan v. Bloedel Containers, Inc.*, 786 F.2d 353, 356–57 (8th Cir. 1986) (same); *Lassen v. Hoyt Livery, Inc.*, 120 F. Supp. 3d 165, 174–75 (D. Conn. 2015) (concluding that limousine drivers' travel time from home to first-pickup-of-the-day was compensable because the limousine drivers' principal activity was driving).

The factual allegations in the Complaint, taken as true, do not establish that the time spent conducting vehicle inspections is part of Rael's principal activities.  The time spent conducting these inspections are not compensable under the FLSA and, therefore, they do not trigger the continuous-workday rule to render the commute time that followed or preceded them compensable, either.

---

[5] In light of this decision, the Court need not address whether Rael's first and last commutes of the day were within "the normal commuting area for [Q3C's] business." 29 U.S.C. § 254(a)(2). Nevertheless, the Court observes that the Complaint contains few if any allegations regarding Q3C's normal commuting area and regarding Rael's travel within or outside of it. At most, the Complaint alleges that Q3C has "[m]ajor operations" in Denver and that Rael's daily commutes are up to two hours per day "in and around" Denver. (Compl. ¶¶ 55 n.1, 62.) Rael does not allege that he performed work on tickets outside of Denver or otherwise outside "the normal commuting area for [Q3C's] business." (*See generally id.*)

## II. CLAIMS UNDER COLORADO LAW

Q3C also argues that Rael fails to plausibly allege a violation of the CWCA for uncompensated time spent conducting vehicle inspections and for time spent commuting to and from the first and last tickets of the day. (Doc. No. 17 at 13–15.) The Court does not agree.

The CWCA, as implemented by the Colorado Overtime and Minimum Pay Standards (COMPS) Orders,[6] provides that "[e]mployees shall be paid time and one-half of the regular rate of pay for any work in excess of . . . (A) 40 hours per workweek; (B) 12 hours per workday; or (C) 12 consecutive hours without regard to the start and end time of the workday." 7 Colo. Code Regs. § 1103-1:4. COMPS Order #38[7] defines "time worked" as "time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so." 7 Colo. Code Regs. § 1103-1:1, sec. 1.9. The compensability of pre-commute

---

[6] The Colorado Department of Labor and Employment is authorized to promulgate a new COMPS Order each year. *E.g.*, *Sobolewski v. Boselli & Sons, LLC*, 342 F. Supp. 3d 1178, 1182 (D. Colo. 2018) (citing C.R.S. tit. 8, arts. 1, 4, 6, 12). Each COMPS Order supersedes the previous year's order, establishes a minimum wage, and "regulates wages, hours, working conditions and procedures for certain employers and employees for work performed within the boundaries of the state of Colorado." 7 Colo. Code Regs. § 1103-1:1.

[7] Courts refer to the COMPS Orders in effect at the time of an employee's relevant employment. *E.g.*, *Bachanov v. Fedex Ground Package Sys., Inc.*, No. 20-CV-0601 (WJM/SKC), 2020 WL 7074794, at *2 (D. Colo. Dec. 3, 2020). Rael alleges that Q3C employed him from March 2023 through July 2023. (Compl. ¶ 62.) COMPS Order #38 applies here because it was effective from January 1, 2022–December 31, 2023. *See Labor Rules, Proposed and Adopted*, Colo. Dep't of Labor & Empl., https://cdle.colorado.gov/dlss/labor-rules-proposed-and-adopted [https://perma.cc/4WJL-3VP7].

activities under Colorado law, then, does not require a "principal activity" analysis as it otherwise would under the FLSA. Rather, employees are engaged in compensable "time worked" under Colorado law if they are "on the employer's premises, on duty, or at a prescribed workplace" *and* engage in a broad range of work-related activities. *Id.* sec. 1.9.1. More specifically, COMPS Order #38 provides that the time spent conducting safety inspections benefits the employer and is one of the work-related activities that fall within the meaning of the term "time worked," as follows:

> Requiring or permitting employees to be on the employer's premises, *on duty*, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain on-premises)—including but not limited to putting on or removing required work clothes or gear (but not a uniform worn outside work as well), receiving or sharing work-related information, *security or safety screening*, remaining at the place of employment awaiting a decision on job assignment or when to begin work, *performing clean-up or other duties "off the clock,"* clocking or checking in or out, or waiting for any of the preceding—shall be considered time worked that must be compensated . . . .

*Id.* (emphasis added).

In this way, compensable "time worked" under Colorado law is broader than what is covered by the FLSA. *Cf. Brunson v. Colo. Cab Co.*, 433 P.3d 93, 97 (Colo. App. 2018) (observing that the FLSA "sets a floor, not a ceiling, on compensation that employees must receive" (quotation omitted)). Indeed, Colorado courts advise that the CWCA "is to be liberally interpreted to serve its purpose of ensuring that wages are paid in a timely manner and to provide adequate judicial relief in the event wages are not paid." *Irigoyen-Morales v. Concreations of Colo., Inc.*, No. 15-CV-02272 (LTB/KLM), 2016 WL 9735757, at *2

(D. Colo. June 30, 2016) (citing *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 421 (Colo. App. 2002)).

In addition to COMPS Order #38, the Colorado Division of Labor Standards and Statistics has issued Interpretive Notice & Formal Opinions (INFOs), which provide non-binding guidance regarding the implementation of the COMPS orders.[8]  One opinion, INFO #20A, addresses COMPS Order #38 and "explains what does and doesn't count as time worked under Colorado law."  INFO #20A.  It further provides that the CWCA is intentionally different from the FLSA with regard to the compensability of pre- and post-commute tasks:

> Federal wage law . . . originally counted pre-/post-shift tasks (screenings, gear time, etc.) as time worked—until a later federal statute (the Portal-to-Portal Act, "PTPA") excluded some "preliminary and postliminary" activity that isn't "integral and indispensable."
> But: **Colorado never adopted the federal statute excluding pre- and post-shift activities from time worked** (the PTPA). **Pre-/post-shift tasks** like these may take just seconds, but **count as time worked** if **over one minute**:
> - putting on or removing required **clothes or gear**, but **not** uniforms also worn **outside work**;
> - pre- or post-shift meetings, or other sharing or receiving of **work-related information**;
> - **clock** or **check in/out**, or security/safety **screening**;

---

[8] INFOs are the Colorado Division of Labor Standards and Statistics' "officially approved notices, opinions, and explanations on various labor law topics." *Interpretive Notice and Formal Opinions (INFOs) and Other Published Guidance*, Colo. Dep't of Labor & Empl., https://cdle.colorado.gov/dlss/interpretive-notice-and-formal-opinions-infos-and-other-published-guidance [https://perma.cc/6R5P-5CUT]; *see also* Jill Sturgeon, *Researching Colorado Employment Law*, 50 Colo. Law. 6, at *7 (Mar. 2021) (searchable on Westlaw as 50-MAR COLAW 6).  Each INFO expressly advises that its contents are "not binding law."  *See, e.g.*, *INFO #20A*, Colo. Div. of Labor Standards & Statistics at 1 (Jan. 26, 2023) [hereinafter "INFO #20A].

- staying at work **waiting** for **assignments**;
- **set-up**, **clean-up**, or other "**off the clock**" duties; or
- **waiting** for activities like those listed here.

*Id.* at 1–2 (emphasis in original). INFO #20A advises that the non-exhaustive list of examples of time worked it provides, and those provided in the COMPS Order, are "just examples," and that, to determine whether activities not explicitly listed are time worked, employers should "apply the general rule: whether time is for employer benefit." *Id.* at 3.

Applying this definition of "time worked" to the alleged facts, and construing the law liberally, as the Court must, *see, e.g.*, *Irigoyen-Morales*, 2016 WL 9735757, at *2, the Court is compelled to deny Q3C's motion. As alleged in the Complaint, Q3C required Rael and other utility locators to conduct pre- and post-commute vehicle inspections and provide weekly written confirmation that they did so. (Compl. ¶¶ 104–105.) The Complaint further alleges that the mandatory vehicle inspections ensure the safety of the vehicles used by Q3C's employees. (*Id.* ¶ 91 (the inspections include the following tasks: "walking around the vehicle and conducting a visual inspection, checking the undercarriage, checking the brakes, checking the oil, checking the tires, checking all mirrors, and ensuring the lights and horn function properly").) Because the vehicle inspections concern the safety of company vehicles, and because the COMPS Order explicitly includes "safety screenings" in the definition of "time worked," the Complaint plausibly alleges a violation of Colorado law.

Q3C separately argues that the time Rael spent commuting to and from his first and last tickets of the day is not compensable under Colorado law. In doing so, Q3C correctly notes that under both federal and Colorado law, the time an employee spends on their

15

normal commute is generally not compensable. 29 U.S.C. § 254(a)(1); *see also*, 2018 Opinion Letter at *4 ("[C]ompensable worktime generally does not include time spent commuting between home and work, even when the employee works at different job sites."). Likewise, COMPS Order #38 generally excludes "travel time" from compensable activities: "At the start or end of the workday, travel to or from a work station, entirely within the employer's premises and/or with employer-provided transportation, shall not be considered time worked." 7 Colo. Code Regs. § 1103-1:1, sec. 1.9.2.

Contrary to Q3C's argument, however, Colorado law[9] includes a continuous workday rule that operates as an exception to this general exclusion of time spent

---

[9] As noted above, under federal law, the applicability of the continuous workday exception to the exclusion of time spent commuting depends on whether the pre- or post-liminary activity falls within the employee's principal activities. As discussed here, the Colorado continuous workday rule depends instead on whether the pre- or post-liminary activities fall within the definition of "time worked." Q3C argues that INFO #20C changed the Colorado continuous workday rule as stated in COMPS Order #38, such that the vehicle inspections must make the travel time longer, more risky, or subject to some additional restrictions in order to make time spent commuting compensable. (Doc. No. 28 at 11–13 (quoting INFO #20C, Colo. Div. of Labor Standards & Statistics at 3–4 (Jan. 26, 2023) (stating that commuting is not time worked, except "[i]f, during a commute, employees engage in other time worked" or "work is required immediately before commuting to work, or immediately after commuting home, that gives the commute increased (a) length, (b) risk, or (c) restrictions on activity")).) To the extent that INFO #20C conflicts with COMPS Order #38, the Court must give effect to the language of COMPS Order #38, not to any contrary, non-binding advice included in INFO #20C. The Court also observes that Q3C's interpretation of INFO #20C conflicts with the plain language of INFO #20A. Finally, the Court disagrees with Q3C that it must interpret INFO #20C to make Colorado law consistent with federal law. *See Brunson*, 433 P.3d at 97–98 (declining to refer to the FLSA to interpret portion of COMPS Order where relevant state law was not structured similarly to the FLSA); *see also Hamilton v. Amazon.com Servs., LLC*, No. 23-1082, 2024 WL 158760, at *3–4 (10th Cir. Jan. 12, 2024) (declining to refer to the FLSA to resolve "potential ambiguity in the wage order," especially where provision of wage order in question was patterned from the FLSA).

commuting, requiring employers to compensate employees for commuting that occurs "after compensable time starts or before compensable time ends":

> [T]ime spent on travel for the benefit of an employer, excluding normal home to work travel, and shall be considered time worked. At the start or end of the workday, travel to or from a work station, entirely within the employer's premises and/or with employer-provided transportation, shall not be considered time worked, except that such travel is compensable if it is:
>
> (A) time worked . . .;
>
> (B) after compensable time starts or before compensable time ends . . .; or
>
> (C) travel in employer-mandated transportation (1) that materially prolongs commute time or (2) in which employees are subjected to heightened physical risk compared to an ordinary commute.

7 Colo. Code Regs. § 1103-1:1, sec. 1.9.2. In light of the decision above that the Complaint plausibly alleges that the vehicle inspections fall within the definition of "time worked" as set forth in COMPS Order #38, compensable time started when Rael began the first required vehicle inspection of the day. Likewise, compensable time ended when Rael concluded the last required vehicle inspection of the day. COMPS Order #38 makes all travel that occurs after the pre-commute vehicle inspection and before the post-commute vehicle inspection compensable, excepting such travel from the general exclusion of time spent commuting. Therefore, Rael's state-law claims (Counts II and III) survive Q3C's motion intact.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendant Q3 Contracting, Inc.'s Motion for Partial Dismissal (Doc. No. 15) is GRANTED IN PART and DENIED IN PART;

2. The Court GRANTS Q3 Contracting, Inc.'s request to DISMISS the portion of Count I in which Rael alleges that Q3 Contracting, Inc. violated the FLSA by failing to pay him overtime and/or regular wages for time spent conducting mandatory pre- and post-commute vehicle-safety inspections and time spent commuting to and from his first- and last-assigned worksites of the day; and

3. The Court DENIES Q3 Contracting, Inc's request to dismiss any portion of Counts II and III.

Dated: July 30, 2024

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court